UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ERIC A. WOODLING | ) | CASE NO. 5:20-CV-02602-JRA |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| GEOBUILD, LLC, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

This matter appears before the Court on Defendant GeoBuild's motion for summary judgment. The motion for summary judgment is GRANTED.

I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Eric A. Woodling worked as a union laborer for Defendant GeoBuild from September 2013 until March 22, 2019. GeoBuild is a company that offers design and construction services, such as landslide stabilization, roadside stabilization, and earth retention. As a laborer on these projects, Mr. Woodling was required to meet certain physical requirements, such as the ability to stand, walk, squat, kneel, sit, maneuver heavy objects on uneven hillside, and lift heavy objects weighing on average around 50 pounds, which Mr. Woodling admits is standard in the industry. He also admits that, while he was employed by GeoBuild, he regularly had to lift items.

On every project, GeoBuild assigns a supervising laborer from among its union laborers. The company does not have a separate position for this role. When GeoBuild requires a foreman on a project, it usually assigns a union laborer who, according to the Union contract, "shall be a Laborer," meaning the foreman must meet the same physical requirements and perform the same

duties as a laborer, in addition to other responsibilities, such as completing daily project paperwork. Doc. 39 at 3; Doc. 39-3 at GEO000151. GeoBuild has these arrangements because it needs to keep costs low in order to win bids for new projects and having a separate position for supervising laborer would be an extra expense that would undermine GeoBuild's competitiveness.

Occasionally, Mr. Woodling performed the role of a supervising laborer. The last project Mr. Woodling was assigned as a supervising laborer was on a project in Monroeville, Pennsylvania, in late 2018. Mr. Woodling does not dispute that on those occasions he performed the supervising duties in addition to the manual labor. Doc. 39 at 3.

"Q. During the time that you supervised work – and I assume when you were supervising work, you were a working supervisor?

A. Yes.

Q. You didn't just do paperwork, you did paperwork and the job of a laborer?

A. Yes."

Mr. Woodling suffers from spinal stenosis and degenerative disc syndrome. In late 2018, his physician informed him that he needed surgery. Doc. 45 at 6-7. Mr. Woodling alleged that around that time, during a meeting with Mr. Hale, he told him about his medical condition and Mr. Hale told him that he was valued more "for his brain than his brawn." However, Mr. Woodling later admitted that he is not sure that the subject was ever brought up during that meeting. In January 2019, GeoBuild approved unpaid leave so that he could undergo a cervical surgery and subsequent physical therapy. Doc. 39 at 4. Mr. Woodling received temporary disability benefits while he was recovering from the surgery. He agrees that the unpaid leave was a reasonable accommodation. Doc. 45 at 10.

On March 6, 2019, Mr. Woodling emailed Mr. Paul Hale, then President of GeoBuild, a doctor's note which stated that Mr. Woodling could return to work for "light duty," with a lifting restriction of 25 pounds. In the same email, Mr. Woodling mentioned the possibility of his returning to work in a supervising laborer capacity. Mr. Hale's response was that due to his lifting restriction and "safety sensitive nature of his job as a Laborer," GeoBuild wanted to avoid the risk of Mr. Woodling reinjuring himself. Doc. 39-4 at GEO000023. Mr. Hale advised Mr. Woodling that, unless the union had other options, Mr. Woodling's next option would be unemployment benefits. Doc. 39-4 at GEO000023.

In subsequent emails, Mr. Woodling continued to ask to be returned to work on light duty. He felt that he was treated differently than other colleagues who were returned to work on light duty. However, it transpired that GeoBuild never had any laborers on light duty, which Mr. Woodling later confirmed. Nevertheless, GeoBuild did not terminate Mr. Woodling immediately. On the contrary, GeoBuild accommodated Mr. Woodling by assigning him to jobs that would not interfere with his 25-pound lifting restriction, such as viewing job sites and training on a new piece of equipment which Mr. Woodling was expected to operate upon his return. Doc. 39-5 (showing sixteen hours of work for the period ending March 10, 2019).

On March 17, 2019, Mr. Woodling submitted via email a second doctor's note, dated March 4, 2019, the same date as the first note, in which "light duty" was replaced with "regular duty." Doc. 39-4 at GEO00091. He further added that, after one more week of therapy, he should be able to return to work. Doc. 39-4 at GEO000088. Although Mr. Hale informed Mr. Woodling that he would need to fill out a return-to-work form, Mr. Woodling never provided GeoBuild with the return-to-work form or a physician's note that removed the 25-pound restriction. Doc. 39-4 at

GEO000023, Doc. 39 at 6. The restriction was lifted at Mr. Woodling's six-month appointment in September 2019.

Around the same time Mr. Woodling went on medical leave, GeoBuild learned about a rockslide that collided with a land stabilization project GeoBuild installed next to a road in Mineral County, West Virginia ("SR 46 Project"). Matt Morris, an engineer of the project, emailed Mr. Hale about the land slide along with pictures of three nails that were pulled out of the ground that, based on Mr. Morris's opinion and Mr. Hale's examination of the photographs, were poorly grouted. While on this occasion the system trapped the rocks and earth, poor quality installations can result in travel delays, injury, or even death, exposing GeoBuild to liability. GeoBuild considers this to be a terminable offense. Doc. 39 at 7-8.

Upon receiving the information about the rockslide and damages to the stabilization system, Mr. Hale engaged in an investigation to address the concerns of the customer regarding the warranty and whether the system remained stable. Mr. Hale conducted the investigation and concluded that "the system was still intact and performing as designed." This information was relayed to the customer on March 5, 2019.

On March 21, 2019, Mr. Hale called Mr. David Repp, supervising laborer of the SR 46 Project, to ask who ran the grout nozzle on that job. After he consulted his project paperwork, Mr. Repp told Mr. Hale that Mr. Woodling ran the grout nozzle on the project. Doc. 39 at 8. Mr. Woodling disputes that he exclusively ran the grout on the project. He points out that Mr. Repp was not certain that he ran the nozzle on every nail hole. He further contends that for three out of five days when grouting was performed on the site, the records GeoBuild has do not identify the individual who performed the grouting. However, Mr. Woodling admitted that he was the

individual responsible for grouting the nails on the SR 46 Project. Doc. 46 at 18. The next day, March 22, GeoBuild terminated Mr. Woodling's employment due to poor job performance.

## II. LEGAL STANDARD OF REVIEW

A party seeking summary judgment must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is material if it is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary burdens. *Id.* At 252. Further, on summary judgment, the inferences to be drawn from underlying facts must be viewed "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The pivotal question in deciding a motion for summary judgment is whether a reasonable fact finder *could* make a finding in favor of either party. *See Anderson* 477 U.S. at 250 ("The inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.").

The initial burden of showing the absence of any "genuine issue" belongs to the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury" or other fact-finder at trial. *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). A party opposing summary judgment must show that there are facts genuinely in dispute and must do so by citing to the record. Fed.R.Civ.P. 56(c)(1)(a).

III.   LEGAL ANALYSIS

   A. Disability Discrimination Under the ADA

Disability discrimination claims premised on indirect evidence are examined under the *McDonnell-Douglas* burden-shifting framework. The plaintiff must first make out a prima facie case to establish a disability discrimination claim. Once the plaintiff overcomes this initial showing, the burden shifts to the defendant to "articulate a non-discriminatory explanation for the employment action, and if the defendant does so, the burden shifts back to the plaintiff to prove that the defendant's explanation is pretextual." *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011)(quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04,(1973)).

   1. Disability – *Prima Facie* Case

The federal Americans with Disabilities Act ("ADA") prohibits a covered employer from discriminating against a "qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A prima facie case of disability discrimination under the ADA requires that a plaintiff show: "(1) he or she is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment action decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the individual was replaced." *Whitefield*, 639 F.3d at 258-59 (quoting *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007)).

### i. Mr. Woodling failed to show that he was disabled.

ADA defines disability as a "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). "Major life activities" include, among others, "walking, standing, lifting, bending, … and working." 42 U.S.C. § 12102(2). Under the *McDonell-Douglas* framework, a plaintiff must first carry his burden of proof and show that he was disabled. To determine whether an impairment substantially limits a major life activity within the meaning of ADA, the Court considers the following three factors: "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment, and (3) the permanent or long-term impact of the impairment." *Cardenas-Meade v. Pfizer, Inc.,* 510 Fed. Appx. 367, 370 (6th Cir. 2013).

The Court finds no genuine issue of fact regarding Mr. Woodling's alleged disability. Here, under the first prong of the ADA disability definition, there is no evidence in the record to show that Mr. Woodling was disabled such that he suffered a physical impairment that substantially limited a major life activity. He did not present any evidence that would demonstrate the nature and severity of his impairment. The only evidence Mr. Woodling proffered is a doctor's note that put a 25-pound lifting restriction for six months. The restriction was lifted in September 2019, six months after it was instated. Beyond that, the note does not have information that would suggest that Mr. Woodling suffered of an impairment that substantially limited a major life activity.

Furthermore, Mr. Woodling's email suggests that he considered the six-month timeline on the physician's note to be his next appointment. In the email, he also states that his physician told him that he could do any work as long as he did not experience any pain. Mr. Woodling does not argue that cervical stenosis or  the 25-pound lifting restriction is a disability that substantially limits

a major life activity. *See Thompson v. Holy Family Hosp.*, 121 F.3d 537, 540 (9th Cir.1997) (per curiam) (finding that lifting restriction of 25 pounds did not substantially impair major life activity of lifting), superseded on other grounds by statute, ADA Amendment Act of 2008, Pub.L. No. 110–325. Absent any evidence that shows that Mr. Woodling suffered from a disability, Mr. Woodling failed to produce evidence that would create a genuine issue of material fact that should be resolved by a jury, and, therefore, he failed to meet the first element of the *prima facie* case.

Mr. Woodling attempts to create a dispute of material fact by arguing that he was "regarded as" disabled. To satisfy the regarded as prong, Mr. Woodling would have to show either (1) "that the defendants mistakenly believed that he had a limiting impairment when in fact he did not" or (2) "that the defendants believed he had a limiting impairment when that impairment, in fact, was not so limiting." *Talley v. Fam. Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1106 (6th Cir. 2008).

Here, Mr. Woodling argues that it can be inferred GeoBuild knew at least since November 2018, when Mr. Hale allegedly made the comment that Mr. Woodling was valued more for his "brain than brawn," that Mr. Woodling had a limiting impairment. Mr. Woodling further attempts to buttress his assertion that GeoBuild regarded him as disabled because it afforded him a leave of absence to undergo surgery and physical therapy in January 2019 and engaged with Mr. Woodling in an interactive process when Mr. Woodling attempted to return to work.

Knowing that someone suffers of a medical condition does not necessarily mean that this individual is regarded as disabled. Mr. Woodling does not point to any action taken by Mr. Hale on behalf of GeoBuild that would show that he considered or believed Mr. Woodling to be disabled. On the contrary, GeoBuild continued to assign him projects. For example, he was assigned as a supervising laborer on a project in Monroeville, Pennsylvania, just a few weeks before Mr. Woodling went on medical leave to undergo surgery. There is nothing in this record

that would suggest that GeoBuild inferred that Mr. Woodling was disabled and acted upon this inference.

To further undermine Mr. Woodling's contention, he admits that he does not think that, during the meeting when Mr. Hale allegedly made the "brain versus brawn" comment, he actually brought up the subject of his medical condition. Therefore, even if Mr. Woodling made that comment, it does not in any way suggest that Mr. Hale made it in connection to Mr. Woodling's purported disability or Mr. Hale's belief that Mr. Woodling suffered from a limiting impairment because the context of the conversation could not have been Mr. Woodling's medical condition.

When Mr. Woodling returned from his medical leave with a lifting restriction, GeoBuild assigned him tasks that would not interfere with his restriction. However, the nature of those tasks suggest that GeoBuild expected that Mr. Woodling would return to his regular duties as soon as practicable. For example, Mr. Woodling attended training on a new piece of equipment that he was expected to run once he returned to his work. Thus, Mr. Woodling fails to create a genuine issue of material fact under this prong as well.

### ii. Mr. Woodling was not otherwise qualified with or without accommodations.

Assuming that Mr. Woodling was disabled, he still cannot make out a *prima facie* case because he was not an "otherwise qualified" individual. To be classified as an "otherwise qualified" individual, Mr. Woodling must show that he was able to perform essential functions of laborer or supervising laborer "with or without reasonable accommodations." A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Mr. Woodling is qualified if, and only if, he

can perform the essential functions of the job in question. To determine whether a function is essential, the Court may consider factors such as:

> (i) The employer's judgment as to which functions are essential;
>
> (ii) Written job description prepared before advertising or interviewing applicants for the job;
>
> (iii) The amount of time spent on the job performing the function;
>
> (iv) The consequences of not requiring the incumbent to perform the function;
>
> (v) The terms of a collective bargaining agreement;
>
> (vi) The work experience of past incumbents in the job; and/or
>
> (vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3).

The Court must give some deference to the employer's judgment in determining what functions of a job are essential. 42 U.S.C. § 12111(8). The inquiry into whether a function is essential is highly fact specific. *Hoskins v. Oakland Cty. Sheriff's Dept.*, 227 F.3d 719, 726 (6th Cir. 2000). "'Such a determination should be based upon more than statements in a job description and should reflect the actual functioning and circumstances of the particular enterprise involved.'" *Hoskins v. Oakland Cty. Sheriff's Dept.*, 227 F.3d 719, 726 (6th Cir. 2000) (quoting *Brickers v. Cleveland Bd. of Educ.*, 145 F.3d 846, 849 (6th Cir. 1998)).

Here, the record shows that GeoBuild considered lifting to be an essential function of the job. GeoBuild hired union laborers because they are trained to perform physically strenuous activities. In addition, the nature and circumstances of the job suggest that lifting was an inextricable function of the activities union laborers and supervisors performed on project sites. Assessing the "actual functioning and circumstances of the particular enterprise involved,"

GeoBuild is a company that offers construction services for landslide stabilization, roadside stabilization, and earth retention. These are physically demanding projects that require workers to be able to perform a range of physical tasks, including lifting. Mr. Woodling further corroborates this assessment by admitting that lifting 50 pounds is standard in the industry.

GeoBuild considers lifting to be an essential function, the nature of the job supports that lifting is an essential function, and Mr. Woodling admits that lifting 50 pounds is customary in the industry. Nevertheless, Mr. Woodling attempts to create a dispute by alleging that GeoBuild did not have a job description until after Mr. Woodling was fired. His argument fails because the absence of a job description is not dispositive in showing that a function was considered to be essential. The Court can look into other aspects of a job to determine whether a requirement was considered an essential function. Considering GeoBuild's judgment, the nature of the job, and Mr. Woodling's admission, the Court finds that there is no dispute that lifting is an essential function of the job.

Further, Mr. Woodling alleges that it is customary that older workers are assigned "less strenuous jobs," and that in the last two years he did not lift any cement bags. But this is not to say that Mr. Woodling did not do any lifting in this time. In fact, Mr. Woodling admits that he regularly lifted items while he was employed by GeoBuild. One of the reasons GeoBuild hires union laborers is because they are trained in performing physically demanding jobs, including lifting heavy objects, as specified in the union contract. Given the nature of the job, a 25-pound lifting restriction would have precluded Mr. Woodling from performing most of what should be routine tasks.

Moreover, GeoBuild never hired a supervising laborer who would not perform the duties of a laborer. GeoBuild adopted this business strategy in order to keep costs down to remain competitive. Whether or not Mr. Woodling was aware of the reasons why GeoBuild did not hire

supervising laborers who would only perform ministerial duties, he admits that, when he was assigned supervising laborer on a project, he performed both manual labor as well as paperwork tasks.

For the reasons discussed above, Mr. Woodling fails to meet the second prong of the *prima facie* case. He is unable to create a material dispute that he was an otherwise qualified individual because he had a 25-pound lifting restriction that prevented him from performing any tasks that involved lifting – an essential function of both the job of laborer and supervising laborer. Accordingly, the Court finds that Mr. Woodling failed to show that there is a genuine issue of material fact regarding this prong.

### 2. Nondiscriminatory explanation

Assuming Mr. Woodling established a *prima facie* case of disability, the burden shifts to GeoBuild to give a nondiscriminatory explanation for the adverse employment decision. The Sixth Circuit adopted the *honest belief* rule to the extent that the nondiscriminatory explanation is "reasonably based on particularized facts rather than on ignorance and mythology." *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998).

> In deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.

*Id*. at 807 (internal quotations omitted).

GeoBuild's explanation for terminating Mr. Woodling employment is that Mr. Woodling performed poor grouting on a land stabilizing project that put in danger the safety of the public.

Had the system failed, it could have resulted in travel delays, injury, or even death, exposing GeoBuild to liability. Mr. Hale reasonably based his conclusion that Mr. Woodling was responsible for the poor grouting after he conducted an internal investigation. According to the project's paperwork prepared by Mr. Repp, the supervising laborer on the project, Mr. Woodling was responsible for the grouting on the SR 46 Project. Thus, the decision Mr. Hale made was reasonably based on particularized facts.

The employer is required to make a reasonably informed decision, not to undertake an optimal process or leave no stone unturned. Here, Mr. Woodling argues that Mr. Hale did not conduct a thorough investigation because he based his decision on Mr. Repp's information, information that grouting was poor from the engineer who was on the site and took pictures of the nails, and by analyzing the pictures. But Mr. Hale is not required to conduct an exhaustive investigation, he only had to make a decision based on particularized facts. GeoBuild is not required to investigate every possible fact. Thus, Mr. Woodling's contentions that Mr. Hale did not personally investigate the site or that he waited until March to investigate who was responsible for the grouting do not show that the decision to terminate was uniformed or not based on facts. Other than making an unsupported allegation of suspicious coincidence, Mr. Woodling does not present any other evidence that the reason for termination was pretextual.

On the contrary, the record shows that prior to identifying who was responsible for poor grouting, GeoBuild made reasonable efforts to facilitate Mr. Woodling's transition back to work. Specifically, GeoBuild assigned Mr. Woodling work that did not interfere with his lifting restriction and was ready to cooperate with union representatives to find a satisfactory arrangement for the time Mr. Woodling was recovering from surgery. Mr. Woodling asks why Mr. Hale waited until March to internally investigate who performed the grouting. GeoBuild offers a reasonable

explanation – because its first priority was to ensure that the system did not continue to pose a threat to the public due to any instability that might have been caused by the land slide and prepare a report to the client regarding the condition of the project. Once GeoBuild determined that the system was stable, it turned its attention to investigating who was responsible for the project, and specifically who did the grouting. This does not seem as suspicious or a coincidence as Mr. Woodling wants to suggest.  Thus, GeoBuild satisfied its burden to produce a nondiscriminatory explanation for terminating Mr. Woodling.

### 3. There is no evidence that the explanation was pretextual

Once GeoBuild carried its burden to produce a nondiscriminatory explanation for the adverse employment action, the burden shifts back to the Mr. Woodling to show that the explanation was pretextual.

Mr. Woodling admitted that he was the individual responsible for the grouting on the SR46 Project, even though he disputes that the performed the grouting on all the nails. But based on the information GeoBuild received from Mr. Repp, the supervising laborer on that project, GeoBuild could honestly conclude that Mr. Woodling performed the grouting. Furthermore, Mr. Woodling admits that he was responsible for grouting on that project. The performance of the job was unsatisfactory and was cause for termination.

Mr. Woodling points out that the timing of the termination is suspicious, suggesting that it seems that Mr. Hale was unhappy that Mr. Woodling was assigned some limited duties and it is for this reason that he started the internal investigation. But Mr. Woodling fails to explain how Mr. Hale would know prior to an investigation that Mr. Woodling performed the grouting. The only support for his assertion is that it is seems more than just a coincidence. This falls short of creating a material dispute such that a jury could conclude that the explanation was pretextual.

**B. Failure to Accommodate Claim**

An employer cannot discriminate against a qualified employee with a disability by not making reasonable accommodations, which accommodations for that employee's known limitations do not impose an undue hardship on the operation of the employer's business. 42 U.S.C. § 12112(a) & (b)(5)(A). In order to establish a prima facie case for failure to accommodate, a plaintiff must show that: (1) he is disabled within the meaning of the Act; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) his employer knew or had reason to know about his disability; (4) he requested an accommodation; and (5) the employer failed to provide the necessary accommodation. *Johnson v. Cleveland City Sch. Dist.*, 443 F. Appx. 974, 982-83 (6th Cir. 2011).

Reasonable accommodations consist of '[modifications or adjustments to the work environment, or to the manner or circumstances under which the position … is customarily performed, that enable an individual with a disability … to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(ii). As part of the *prima facie* case, a plaintiff bears the initial burden of proposing an accommodation and demonstrating that the requested accommodation he seeks is objectively reasonable. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010). Importantly, employers are not required to create new jobs as an accommodation for a disabled individual. While a reasonable accommodation may include "job restructuring, part-time or modified work schedules, [or] reassignment to a vacant position" (42 U.S.C. § 12111(9)(B), it also "does not include removing an 'essential function' from the position, for that is *per se* unreasonable." *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 761 (6th Cir. 2015)(internal citation omitted). It is also well established that "the ADA does not require employers to accommodate individuals by shifting an essential job function onto others." *Hoskins v. Oakland Cty. Sheriff's*

*Dep't*, 227 F.3d 719, 729 (6th Cir. 2000). Under Sixth Circuit law, unpaid leave can constitute reasonable accommodation. *Cehrs v. Ne. Ohio Alzheimer's Rsch. Ctr.*, 155 F.3d 775, 782 (6th Cir. 1998).

GeoBuild provided Mr. Woodling with unpaid leave to undergo surgery and physical therapy. Unpaid medical leave can constitute a reasonable accommodation and Mr. Woodling agrees that the medical leave he was afforded was a reasonable accommodation.

Mr. Woodling, however, requested that he be returned to work on light duty and that constituted a reasonable accommodation GeoBuild was required but failed to provide. For his request to constitute a reasonable accommodation, it must be objectively reasonable. Mr. Woodling's proposal entailed that GeoBuild assign him as supervising laborer without him performing any tasks involving lifting. First, lifting is an essential function of the job and removing it is *per se* unreasonable because it would require shifting this function onto other employees. GeoBuild was not required to do that. Second, assigning Mr. Woodling as a supervising laborer would mean that GeoBuild would need to create a position it did not have before to accommodate Mr. Woodling. GeoBuild was not required to do that. The record also suggests that no single GeoBuild union employee performed exclusively the job of supervising laborer. Instead, the employee performing this job was assigned on a project-by-project basis.  Furthermore, Mr. Woodling admits that GeoBuild did not accommodate other employees in the past by allowing them to return on light duty. Mr. Woodling fails to show how his requested accommodation is reasonable and would not create an undue burden on GeoBuild.  Moreover, the record shows that, while Mr. Woodling and Mr. Hale were discussing his return back to work, Mr. Woodling was assigned to tasks that would  not interfere with his lifting restrictions. For all these reasons, Mr.

Woodling fails to create a genuine dispute of material fact regarding his failure to accommodate claim.

IV. **CONCLUSION**

Reviewing the facts in the light most favorable to Plaintiff Eric Woodling, no genuine issue of dispute of material fact exists on any claim against Defendant GeoBuild. Therefore, GeoBuild in entitled to judgment as a matter of law, and its motion for summary judgment is GRANTED.

It is so ordered.

Date:   April 27, 2022                                   */s/ John R. Adams*
                                                        JUDGE JOHN R. ADAMS
                                                        UNITED STATES DISTRICT JUDGE